UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOSE ROMERO and ALBERTO GUEVARA,                            :
on behalf of themselves and all others                      :
similarly situated,                                         :
                                                            :
                                    Plaintiffs,             :
                                                            :
                -against-                                   :        **COMPLAINT**
                                                            :
ESSEX 123 INC. d/b/a CHAMPION PIZZA,                        :
NEW ASTORIA CORP. d/b/a CHAMPION PIZZA,   :        **RULE 23 CLASS AND**
KEH CORP. d/b/a CHAMPION PIZZA,                             :        **FLSA COLLECTIVE**
NJK CORP. d/b/a CHAMPION PIZZA COLUMBUS,:        **ACTION**
MHS PIZZA CORP. d/b/a CHAMPION PIZZA,                 :
101 A&S INC. d/b/a CHAMPION PIZZA LUDLOW, :
RIGHT BRAIN PIZZA CORP. D/B/A CHAMPION        :
PIZZA, TAE SUN KIM a/k/a EDWARD KIM,             :
JOSEPH GUEVARA, and HAKKI AKDENIZ,                   :
                                                            :
                                    Defendants.             :
------------------------------------------------------------------------X

        Plaintiffs Jose Romero ("Romero") and Alberto Guevara ("Guevara") (together,

"Plaintiffs"), on behalf of themselves and all others similarly situated, by their attorneys

Pechman Law Group PLLC, complaining of Defendants Essex 123 Inc. d/b/a Champion

Pizza, New Astoria Corp. d/b/a Champion Pizza, Keh Corp. d/b/a Champion Pizza,

NJK Corp. d/b/a Champion Pizza Columbus, MHS Pizza Corp. d/b/a Champion Pizza,

101 A&S Inc. d/b/a Champion Pizza Ludlow, Right Brain Pizza Corp. d/b/a Champion

Pizza (together, the "Champion Pizza Restaurants"), Tae Sun Kim a/k/a Edward Kim,

Joseph Guevara, and Hakki Akdeniz (collectively, "Defendants"), allege:

## NATURE OF THE ACTION

        1.        Defendants employed Plaintiffs as pizza makers, cooks, delivery workers,

and counter workers at Champion Pizza, a chain of pizzerias known for its 40-pound

cheeseburger-pizza and its celebrity chef and owner Hakki Akdeniz ("Akdeniz"), "a world champion of pizza acrobatics."[1]

2.    Champion Pizza serves pizza "made in New York with love" at its seven locations in Manhattan, Brooklyn, and Queens.[2]

3.    Defendants had a common policy and practice of paying the Plaintiffs and other pizzeria workers "straight-time" for all hours worked, *i.e.* paying all hours at the same hourly rate, thus failing to pay overtime pay for hours worked over forty per workweek.

4.    Defendants also failed to pay Plaintiffs and other pizzeria workers spread-of-hours pay and failed to furnish them with wage notices and wage statements at the end of each pay period.

5.    Plaintiffs bring this action to recover unpaid overtime wages and spread-of-hours pay, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA"), and the New York Labor Law, New York Lab. Law § 190, *et seq.* ("NYLL"), on behalf of themselves and all non-exempt pizzeria workers that worked at the Champion Pizza Restaurants in the six years preceding the filing of this Complaint.

## JURISDICTION

6.    This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331 and 28 U.S.C. § 1337, and has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

---

[1] http://championpizzanyc.com/about.html.
[2] http://championpizzanyc.com/ourlocation.html.

## VENUE

7.    Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, because Defendants conduct business in this District and a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York.

## THE PARTIES

### Plaintiff Alberto Guevara

8.    Guevara resides in Queens County, New York.

9.    Guevara was employed at the Champion Pizza Restaurants as a pizza maker, cook, and delivery worker from approximately August 2017 to November 29, 2018.

10.    Throughout his employment, Guevara was an employee engaged in interstate commerce or in the production of goods for interstate commerce.

### Plaintiff Jose Romero

11.    Romero resides in Hudson County, New Jersey.

12.    Romero was employed at the Champion Pizza Restaurants as a counter worker from approximately August 2017 to November 29, 2018.

13.    Throughout his employment, Romero was an employee engaged in interstate commerce or in the production of goods for interstate commerce.

### Defendant Essex 123 Inc.

14.    Essex 123 Inc. is a New York corporation that owns, operates, and does business as Champion Pizza located at 123 Essex Street, New York, NY 10002.

15.    Essex 123 Inc. (the "Essex Street location") has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling,

3

selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

16.     In the three years preceding the date this Complaint was filed, Essex 123 Inc. had an annual gross volume of sales in excess of $500,000.

**Defendant New Astoria Corp.**

17.     New Astoria Corp. is a New York corporation that owns, operates, and does business as Champion Pizza located at 31-12 Broadway, Long Island City, NY 11106.

18.     New Astoria Corp. (the "Astoria location") has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

19.     In the three years preceding the date this Complaint was filed, New Astoria Corp. had an annual gross volume of sales in excess of $500,000.

**Defendant Keh Corp.**

20.     Keh Corp. is a New York corporation that owns, operates, and does business as Champion Pizza located at 2 West 14th Street, New York, NY 10011.

21.     Keh Corp. (the "14th Street location") has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

22.     In the three years preceding the date this Complaint was filed, Keh Corp. had an annual gross volume of sales in excess of $500,000.

**Defendant NJK Corp.**

23.     NJK Corp. is a New York corporation that owns, operates, and does business as Champion Pizza Columbus located at 1000 South 8th Avenue, New York, NY 10019.

24.     NJK Corp. (the "Columbus Circle location") has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

25.     In the three years preceding the date this Complaint was filed, NJK Corp. had an annual gross volume of sales in excess of $500,000.

**Defendant MHS Pizza Corp.**

26.     MHS Pizza Corp. is a New York corporation that owns, operates, and does business as Champion Pizza located at 17 Cleveland Place, New York, NY 10012.

27.     MHS Pizza Corp. (the "Soho location") has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

28.     In the three years preceding the date this Complaint was filed, MHS Pizza Corp. had an annual gross volume of sales in excess of $500,000.

**Defendant 101 A & S Inc.**

29.     101 A & S Inc. is a New York corporation that owns, operates, and does business as Champion Pizza Ludlow located at 101 Ludlow Street, New York NY 10002.

30.     101 A & S Inc. (the "Ludlow location") has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling,

or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

31.    In the three years preceding the date this Complaint was filed, 101 A & S Inc. had an annual gross volume of sales in excess of $500,000.

**Defendant Right Brain Pizza Corp.**

32.    Right Brain Pizza Corp. is a New York corporation that owns, operates, and does business as Champion Pizza located at 187 Bedford Avenue, Brooklyn NY 11211.

33.    Right Brain Pizza Corp. (the "Brooklyn location") has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

34.    In the three years preceding the date this Complaint was filed, Right Brain Pizza Corp. had an annual gross volume of sales in excess of $500,000.

**The Champion Pizza Restaurants are a Single Employer**

35.    The Champion Pizza Restaurants are a single, integrated enterprise that jointly employed Plaintiffs and other non-exempt pizzeria workers at their seven locations.

36.    During Plaintiffs' employment, Defendants' operations have been interrelated and unified.

37.    Champion Pizza Restaurants share a common website at http://championpizzanyc.com/index.html, as well as common Facebook and Instagram pages.

38.    Champion Pizza Restaurants share a common menu, and its website offers online ordering which allows customers to order directly from any Champion Pizza location.

39.    Champion Pizza Restaurants share a common layout and are similarly decorated with photographs of Defendant Akdeniz.

40.    Champion Pizza Restaurants are centrally controlled and/or owned by Defendant Akdeniz and Tae Sun Kim a/k/a Edward Kim ("Kim").

41.    Defendant Akdeniz and Kim are owners and/or principals of the Champion Pizza Restaurants.

42.    Akdeniz is referred to as the owner of the Champion Pizza Restaurants on Champion Pizza's official website.

43.    The Champion Pizza Restaurants have common management.  General Manager Joseph Guevara has supervisory authority over the employees of the Champion Pizza Restaurants and visits each location regularly.

44.    The Champion Pizza Restaurants are subject to common control of labor relations as employees are regularly transferred between locations by management and payroll is centrally controlled.

45.    During Plaintiffs' employment, Joseph Guevara transferred Plaintiffs and other pizzeria workers between the various Champion Pizza Restaurants.

46.    In September 2017, Joseph Guevara directed Romero to rotate between the 14th Street location, Essex Street location, and Columbus Circle location.  For example, on September 18, 2017, Romero worked at the Essex Street location from approximately 12:30 p.m. to 6:00 p.m., and then at the 14th Street location from approximately 6:30 p.m. to 2:35 a.m.

47.    On weeks that Plaintiffs worked shifts at more than one Champion Pizza location, Defendants paid Plaintiffs their wages in a single envelope for all their hours worked.

48.    The Champion Pizza Restaurants regularly share supplies such as dough, pepperoni, cheese, sausage, macaroni and cheese, and/or pesto. At Joseph Guevara's direction, employees of the Champion Pizza Restaurants were required to transfer supplies between the locations.

**Defendant Hakki Akdeniz**

49.    Akdeniz is the owner, principal, and general manager of the Champion Pizza Restaurants.

50.    Akdeniz had and exercised the power and authority over personnel decisions at the Champion Pizza Restaurants, including the power to discipline employees, hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

51.    Throughout Plaintiffs' employment, Akdeniz was actively involved in managing the day-to-day operations of the Champion Pizza Restaurants.

52.    Together with Kim, Akdeniz is referred to as the owner of the Champion Pizza Restaurants on the Champion Pizza official website. Akdeniz also represents himself as such in Champion Pizza's social media posts and in the media.

53.    Akdeniz is generally present at the Champion Pizza Restaurants approximately one to two times per week and directed the work of the employees, including Plaintiffs.

54.    Akdeniz regularly supervises the pizza makers, including Guevara, and trained them on how to make the varieties of pizzas offered at the Champion Pizza Restaurants, as well as on how to prepare pizza sauce.

55.     Akdeniz supervised and controlled the pizza makers' work by regularly examining the pizzas and ensuring that the pizzas are prepared properly.

56.     Akdeniz exercised sufficient control over the Champion Pizza Restaurants' operations and Plaintiffs' employment to be considered Plaintiffs' employer under the FLSA and NYLL.

**Defendant Kim**

57.     Tae Sun Kim is an owner and manager of the Champion Pizza Restaurants.

58.     Throughout Plaintiffs' employment at the Champion Pizza Restaurants, Kim was actively involved in managing the Champion Pizza Restaurants' day-to-day operations.

59.     Kim was present at the Champion Pizza Restaurants on a daily basis.

60.     Kim had and exercised the power and authority over personnel decisions at the Champion Pizza Restaurants, including the power to discipline employees, hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

61.     Kim terminated Plaintiffs' employment at Champion Pizza.

62.     Kim exercised sufficient control over the operations of the Champion Pizza Restaurants and Plaintiffs' employment to be considered Plaintiffs' employer under the FLSA and NYLL.

**Defendant Joseph Guevara**

63.     Joseph Guevara is the general manager of the Champion Pizza Restaurants.

64.     Throughout Plaintiffs' employment at the Champion Pizza Restaurants, Joseph Guevara was actively involved in managing the Champion Pizza Restaurants' day-to-day operations.

65.     Joseph Guevara was present at the Columbus Circle location on a daily basis and was present at the other Champion Pizza locations once or twice per week.

66.     Joseph Guevara had and exercised the power and authority over personnel decisions at the Champion Pizza Restaurants, including the power to discipline employees, hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

67.     Joseph Guevara interviewed and hired Plaintiffs.

68.     Joseph Guevara set Plaintiffs' weekly work schedules.

69.     Joseph Guevara distributed Plaintiffs' wages.

70.     Joseph Guevara exercised sufficient control over the operations of the Champion Pizza Restaurants and Plaintiffs' employment to be considered Plaintiffs' employer under the FLSA and NYLL.

### FLSA COLLECTIVE ACTION ALLEGATIONS

71.     Plaintiffs bring the claims in this Complaint arising out of the FLSA on behalf of themselves and all similarly situated persons who work or have worked as pizza makers, cooks, counter workers, and/or delivery workers (the "pizzeria workers") at Champion Pizza Restaurants in the three years prior to the filing of this action who elect to opt-in to this action (the "FLSA Collective").

72.     The FLSA Collective consists of approximately thirty-five similarly situated pizzeria workers who have been victims of Defendants' common policy and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime wages, and other monies.

73.     Plaintiffs and the FLSA Collective are and have been similarly situated, have had substantially similar pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies, programs, practices,

10

procedures, protocols, routines, and rules willfully failing and refusing to pay them at the legally required overtime rates for all overtime hours worked.  The claims of Plaintiffs stated herein are essentially the same as those of the FLSA Collective.

74.     As part of their regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA Collective by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL.  This policy and pattern or practice includes, *inter alia,* the following:

> a.  failing to pay the FLSA Collective overtime wages at one and one-half times their regular hourly wage rates for all hours worked over forty per workweek;
>
> b.  failing to pay the FLSA Collective spread-of-hours pay *i.e.,* one additional hour of pay at the statutory minimum hourly rate for each day that their workday exceeded ten hours; and
>
> c.  failing to keep full and accurate records of all hours worked by the FLSA Collective, as required by the FLSA and NYLL.

75.     Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees their compensation.

76.     The FLSA Collective would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  Those similarly situated employees are known to Defendants and are readily identifiable and locatable through their records.  Those similarly situated employees should be notified of and allowed to opt into this action pursuant to 29 U.S.C. § 216(b).  For purpose of notice and other purposes related to this action, their names and addresses are readily available from the Defendants.  Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ACTION ALLEGATIONS

77.    The claims in this Complaint arising out of the NYLL are brought by Plaintiffs under Rule 23 of the Federal Rules of Civil Procedure (Rule 23), on behalf of themselves and of a class consisting of all persons who work or have worked as pizza makers, cooks, counter workers, and/or delivery workers at the Champion Pizza Restaurants for the past six years (the "Rule 23 Class").

78.    The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

79.    The size of the Rule 23 Class is at least sixty individuals, although the precise number of such employees is unknown.  Facts supporting the calculation of that number are presently within the sole control of Defendants. The hours assigned and worked, the positions held, and the rates of pay for each Rule 23 Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Rule 23.

80.    Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole. All the class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay all wages due and failing to provide Class members with required wage notices and wage statements.  Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member.  Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

81.    Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually including, *inter alia*, the following:

      a.    whether Defendants employed Plaintiffs and the Rule 23 Class within the meaning of the New York Labor Law;

      b.    at what common rate, or rates subject to common method of calculation, were and are Defendants required to pay Plaintiffs and the Rule 23 Class for their work;

      c.    whether Defendants paid Plaintiffs and the Rule 23 Class the appropriate overtime rate for all overtime hours worked;

      d.    whether Defendants violated NYLL Article 6, § 190, *et seq.*, and Article 19, § 650, *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Parts 137 and 146, as alleged herein;

      e.    whether Defendants failed to pay the Rule 23 Class spread-of-hours pay *i.e.*, one additional hour of pay at the statutory minimum hourly rate for each day that their workday exceeded ten hours; and

      f.    whether Defendants failed to provide the Rule 23 Class with written notice of wages and wage statements as required by the NYLL and Wage Theft Prevention Act.

82.    The claims of the Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent.  Plaintiffs and the Rule 23 Class work or have worked for Defendants as pizzeria workers within the six years prior to the filing of this action.  They enjoy the same statutory rights under the NYLL to be paid overtime pay for all hours worked.  Plaintiffs and the Rule 23 Class have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

83.    Plaintiffs and the Rule 23 Class have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.

84.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

85.     Plaintiffs have retained counsel competent and experienced in wage and hour litigation and class action litigation.

86.     There is no conflict between Plaintiffs and the Rule 23 Class members.

87.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of defendants' common policies, practices, and procedures.  Although the relative damages suffered by the individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  Individual plaintiffs lack the financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages.  In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

88.     This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## FACTUAL ALLEGATIONS

**Guevara's Hours and Pay**

89.     From the start of his employment in August 2017 through in or about February 2018, Guevara worked a regular schedule at the 14th Street location six days per week, Monday through Wednesday from approximately 6:00 p.m. to 2:00 a.m.; Thursday from approximately 9:00 a.m. to 4:00 a.m.; and Friday and Saturday from approximately 6:00 p.m. to 5:00 a.m., totaling approximately sixty-five hours per workweek.

90.     In or about March 2018, Guevara was transferred to work at the Astoria location, and worked there until November 29, 2018. During this period, Guevara worked a regular schedule of six days per week, Monday through Wednesday from approximately 6:00 p.m. to 2:00 a.m.; Thursday from approximately 6:00 p.m. to 3:00 a.m.; and Friday and Saturday from approximately 6:00 p.m. to 4:00 a.m., totaling approximately fifty-three hours per workweek.

91.     From the beginning of his employment in or about August 2017 through in or about March 2018, Defendants paid Guevara $14.00 per hour worked.

92.     From approximately April 2018 through October 2018, Defendants paid Guevara $15.00 per hour worked.

93.     Throughout November 2018, Defendants paid Guevara $17.00 per hour worked.

94.     Defendants did not pay Guevara at the rate of one and one-half times his regular hourly wage rate for hours worked in excess of forty per workweek.

95.     Defendants did not compensate Guevara with one hour's pay at the statutory minimum hourly wage rate for each day his shift exceeded ten hours.

96.     Throughout his employment, Defendants paid Guevara his weekly wages in cash, without a corresponding wage statement that, *inter alia*, reflected his rate of pay and number of hours worked.

97.     Throughout his employment, Defendants did not furnish Guevara with a wage notice at the time of hiring and/or following a change to his rate of pay.

**Romero's Hours and Pay**

98.     Throughout his employment, Romero regularly rotated between the Champion Pizza Restaurants, often working shifts at two locations in the same day or work week.

15

99.    Romero's weekly schedule varied based on the needs of the restaurant. He typically worked between five and seven days per week, and regularly worked in excess of forty hours per week.

100.    Romero typically worked three or four shifts per week from approximately 5:30 p.m. through 2:00 a.m. or 3:00 a.m., typically Monday through Wednesday and Sunday; and two or three shifts from approximately 5:30 p.m. through 3:00 a.m. or 6:00 a.m., typically Thursday through Saturday, for between approximately forty-four to seventy-five hours per workweek.

101.    For example, for the workweek of September 25, 2017 through October 1, 2017, Romero worked on Monday from approximately 5:42 p.m. to 2:35 a.m.; Tuesday from approximately 5:42 p.m. to 2:29 a.m.; Wednesday from approximately 5:40 p.m. to 2:52 a.m.; Thursday from approximately 5:47 p.m. to 3:45 a.m.; Friday from approximately 5:44 p.m. to 5:31 a.m.; Saturday from approximately 5:41 p.m. to 5:25 a.m.; and Sunday from approximately 5:29 p.m. to 2:12 a.m., totaling approximately sixty-nine hours of work that week.

102.    Romero was also scheduled to work double shifts at least once per month. For example, for the workweek of March 5, 2018 through March 10, 2018, Romero worked on Monday from 5:49 p.m. to 2:29 a.m.; Tuesday from 9:43 a.m. to 2:20 a.m., Wednesday from 5:07 p.m. to 1:02 a.m., Thursday from 11:29 a.m. to 3:51 p.m., Friday from 5:40 p.m. to 4:39 a.m., and on Saturday from 5:06 p.m. to 5:35 a.m., for approximately seventy-three hours per week.

103.    From the beginning of his employment in or about August 2017 through in or about February 2018, Defendants paid Romero $12.00 per hour worked.

104.    From approximately March 2018 to November 29, 2018, Defendants paid Romero $13.00 per hour worked.

16

105.    Defendants did not pay Romero at the rate of one and one-half times his regular hourly wage rate for hours worked in excess of forty per workweek.

106.    Defendants did not compensate Romero with one hour's pay at the statutory minimum hourly wage rate for each day his shift exceeded ten hours.

107.    Throughout his employment, Defendants paid Romero his weekly wages in cash, without a corresponding wage statement that, *inter alia*, reflected his rate of pay and number of hours worked.

108.    Throughout his employment, Defendants did not furnish Romero with a wage notice at the time of hiring and/or following a change to his rate of pay.

### FIRST CLAIM
### (FLSA – Unpaid Overtime Wages)

109.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

110.    Defendants were required to pay Plaintiffs and the FLSA Collective one and one-half (1½) times their regular hourly wage rates for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207 *et seq.*

111.    Defendants failed to pay Plaintiffs and the FLSA Collective the overtime wages to which they were entitled under the FLSA.

112.    Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective overtime wages.

113.    Due to Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## SECOND CLAIM
### (NYLL – Unpaid Overtime Wages)

114.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

115.    Under the NYLL and supporting New York State Department of Labor ("NYDOL") Regulations, such as but not limited to 12 N.Y.C.R.R. Part 146, Defendants were required to pay Plaintiffs and the Rule 23 Class one and one-half (1½) times their regular rates of pay, which shall not be less than the minimum wage rate, for all hours worked in excess of forty per workweek.

116.    Defendants failed to pay Plaintiffs and the Rule 23 Class overtime wages to which they were entitled under the NYLL and its supporting regulations.

117.    Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 Class overtime wages.

118.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

## THIRD CLAIM
### (New York Labor Law – Spread-of-Hours Pay)

119.    Plaintiffs repeat and reallege all foregoing paragraphs as if set forth herein.

120.    Defendants willfully failed to pay Plaintiffs and the Rule 23 Class additional compensation of one hour's pay at the statutory minimum hourly wage rate for each day during which their shifts spread over more than ten hours.

121.    By Defendants' failure to pay Plaintiffs and the Rule 23 Class spread-of-hours pay, Defendants willfully violated Section 650 *et seq.*, of the NYLL and violated the supporting NYDOL regulations, including, but not limited to, 12 N.Y.C.R.R. § 146-1.6.

122.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover an amount prescribed by statute, reasonable attorneys' fees and costs of the action, pre- and post-judgment interest, and liquidated damages.

### FOURTH CLAIM
### (NYLL Wage Theft Prevention Act – Failure to Provide Wage Notices)

123.    Plaintiffs repeat and re-allege all foregoing paragraphs as if fully set forth herein.

124.    The NYLL and the Wage Theft Prevention Act ("WTPA") require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

125.    In violation of NYLL § 195(1), Defendants failed to furnish to Plaintiffs and the Rule 23 Class at the time of hiring, or whenever their rate(s) of pay changed, with a wage notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 195(1)(a); the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

126.    Due to Defendants' violation of NYLL § 195(1), Plaintiffs and the Rule 23 Class are entitled to recover from Defendants liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

### FIFTH CLAIM
### (NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements)

127.    Plaintiffs repeat and re-allege all foregoing paragraphs as if fully set forth herein.

128.    The NYLL and WTPA also require employers to provide employees with an accurate wage statement each time they are paid.

129.    Defendants failed to furnish Plaintiffs and the Rule 23 Class with each payment of wages an accurate statement listing:  the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of the NYLL § 195(3).

130.    Due to Defendants' violation of NYLL § 195(3), Plaintiffs and the Rule 23 Class who opt-in to this action are entitled to recover from Defendants liquidated damages, reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the Rule 23 Class respectfully requests that this Court enter a judgment:

a.    certifying the case as a class action pursuant to the NYLL and Rule 23 of the Federal Rules of Civil Procedure as it pertains to all NYLL claims set forth in the Complaint for the class of employees described herein, certifying Plaintiffs as class representatives, and designating Plaintiffs' attorneys as Class counsel;

b.    authorizing the issuance of notice at the earliest possible time to all pizzeria workers that were employed by Defendants during the three years immediately

preceding the filing of this action, up to and including the date of this Court's issuance of court-supervised notice, at the Champion Pizza Restaurants. This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit; and designating Plaintiffs as representatives of the FLSA Collective;

      c.    declaring that Defendants have violated the overtime wage provisions of the FLSA, the NYLL, and the NYDOL regulations;

      d.    declaring that Defendants have violated the spread-of-hours pay provisions of the NYLL and the NYDOL regulations;

      e.    declaring that Defendants violated the notice and wage statement provisions of the NYLL and WTPA;

      f.    declaring that Defendants' violations of the FLSA and NYLL were willful;

      g.    awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class unpaid overtime wages;

      h.    awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class unpaid spread-of-hours pay;

      i.    awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class liquidated damages in an amount equal to the total amount of the wages found to be due;

      j.    awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class liquidated damages as a result of Defendants' failure to furnish accurate wage statements and wage notices pursuant to the NYLL and the WTPA;

      k.    awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class pre- and post-judgment interest under the NYLL;

l.    awarding reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

m.    awarding such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          February 22, 2019

PECHMAN LAW GROUP PLLC

By: _____
    Louis Pechman
    Vivianna Morales
    Jaime Sanchez
    488 Madison Avenue, 17th Floor
    New York, New York 10022
    Tel.: (212) 583-9500
    pechman@pechmanlaw.com
    morales@pechmanlaw.com
    sanchez@pechmanlaw.com
    *Attorneys for Plaintiffs, the Rule 23 Class, and the FLSA Collective*